# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA CUPP, individually and on behalf of the ESTATE OF ASHLEY CUPP, deceased, et al., | CIVIL ACTION NO. 3:20-cv-001784 |
| Plaintiffs, | (SAPORITO, M.J.) |
| v. | |
| COUNTY OF LYCOMING, et al., | |
| Defendants. | |

## MEMORANDUM

This federal civil rights action arises out of the death of Ashley Cupp on February 22, 2019. At the time of her death, Cupp was incarcerated at Lycoming County Prison. She was a pretrial detainee, awaiting a probation revocation hearing.

This action is brought by the decedent's mother, Pamela Cupp, appearing through counsel. She has brought this action in her personal capacity, in her role as administrator of the decedent's estate, and in her role as guardian of the decedent's two minor children, Z.B. and L.C.

The five-count second amended complaint names seventeen defendants. These include the County of Lycoming and sixteen individual defendants who worked at Lycoming County Prison: (1) Brad Shoemaker,

warden of the prison; (2) Ryan Barnes, deputy warden; (3) Christopher Ebner, deputy warden; (4) Monica Laird, corrections officer; (5) Lacey Swaine, corrections officer; (6) Maggie Marshall, corrections officer; (7) Jerrica Mull, corrections officer; (8) Maelynne Murphy, licensed practical nurse; (9) Erin Dvorscak, licensed practical nurse; (10) Andrea Hoover, licensed practical nurse; (11) Kim Poorman, licensed practical nurse; (12) Iesha Glover, licensed practical nurse; (13) Nicole Dawson, licensed practical nurse; (14) Tara Savage, licensed practical nurse; (15) Dr. William Keenan, Jr., a physician who provided medical services to inmates at the prison as an independent contractor and who served as medical director of the prison; and (16) Dr. Janice Schifferli, a physician who also provided medical services to inmates at the prison as an independent contractor. Shoemaker, Barnes, and Ebner are named in both official and personal capacities; all other individual defendants are named in their personal capacity only.

The second amended complaint alleges that the decedent was denied adequate medical care while incarcerated at Lycoming County Prison, resulting in her death on February 22, 2019. Based on this, the plaintiff brings multiple § 1983 claims against the defendants on

alternative legal theories, and she brings supplemental state-law medical negligence claims against the two physician defendants. Sorting themselves into two separately represented groups,[1] the defendants have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. (Doc. 55; Doc. 56.) Both motions are fully briefed and ripe for decision. (Doc. 39; Doc. 43; Doc. 46; Doc. 49; Doc. 50; Doc. 51.)

## I.  FACTUAL BACKGROUND

In February 2018, the decedent, Ashley Cupp, pleaded guilty to third-degree retail theft, for which she was sentenced to serve a period of 3 to 11 months in jail, to be followed by a consecutive 25-month period under the supervision of a county intermediate punishment program ("IPP"). *Commonwealth v. Cupp*, Docket No. CP-41-CR-0000234-2018 (Lycoming Cty. (Pa.) C.C.P.).[2] *See generally* 42 Pa. Cons. Stat. Ann.

---

[1] One group is comprised of the two independent contractor physician-defendants, Keenan and Schifferli (the "Physician Defendants"). The other group is comprised of the County and the remaining 14 individual defendants, all of whom are County employees (the "County Defendants").

[2] In addition to the allegations of the amended complaint, we have considered the publicly available docket record of the decedent's state court criminal proceedings. A district court, of course, may properly take

*(continued on next page)*

§ 9804; *Commonwealth v. Wegley*, 829 A.2d 1148, 1152–53 (Pa. 2003) (discussing IPP sentencing, a "sentencing option . . . between probation and incarceration").

In September 2018, for reasons that are not alleged in the second amended complaint or evident from the state court records, a bench warrant was issued for Cupp's arrest. *See Commonwealth v. Cupp*, Docket No. CP-41-CR-0000234-2018 (Lycoming Cty. (Pa.) C.C.P.). On or about October 25, 2018, Cupp was taken into custody and incarcerated at Lycoming County Prison as a pretrial detainee, pending a probation violation hearing. *See id.* Four months later, on February 22, 2019, Cupp died while in custody due to complications of a cardiac condition.

Upon entering Lycoming County Prison in October 2018, Cupp was screened for medical and mental health conditions. She suffered from serious and known medical conditions, including an aortic valve replacement, cardiomyopathy, bipolar disorder, depression, anxiety, post-traumatic stress disorder, and opioid dependence. In particular, she

---

judicial notice of state court records, as well as its own. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 498–99 (3d Cir. 1997); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

had ongoing heart-related symptoms, and she had been prescribed various daily medications by her cardiologist. She also had a known history of significant and serious mental health conditions and suicide attempts.

Although Cupp requested her medications, including in particular those prescribed by her cardiologist, she did not receive them consistently at Lycoming County Prison. Throughout her incarceration there, Cupp complained of and requested medical care for various medical problems, including swollen and painful legs, red lines on her legs, numbness in her legs and body, difficulty breathing, chest pain, nausea, general malaise, and high blood pressure. While incarcerated, she was observed by unidentified inmates, jail staff, and medical staff as having significant physical problems, including swelling, difficulty walking, falling, crying out in pain, crying out for help, having ice-cold legs, being drenched in sweat, difficulty breathing, gasping for air, extreme difficulty standing, inability to get up to eat, inability to get up to shower, and inability to get up to use the restroom. Cupp repeatedly requested medical assistance while incarcerated, both verbally and in writing, and both directly and indirectly through other inmates, but she was not provided with any

assistance by jail or medical staff. She complained that her medications were not working and were making her feel funny. Cupp's frequent cries of pain and for help were ignored by the defendants.

Cupp's physical condition deteriorated such that other inmates found it necessary to assist her by helping her get to the shower, picking her up after falls, helping her to get dressed, brushing her hair, rubbing her back, retrieving items for her, getting her water, helping her elevate her painfully swollen legs, helping her submit medical requests, showing jail staff the red lines on her legs, telling the jail staff that she was having trouble breathing, asking jail staff to feel her ice-cold legs, placing rags soaked in hot water on her legs, and obtaining cloths soaked in cold water for her head. Due to feeling unwell, being in pain, and being too weak to get out of her bed, Cupp ate little while incarcerated.

At the time she entered the Lycoming County Prison, Cupp was detoxing. Despite knowledge that she was detoxing, the defendants failed to properly place her in a detoxification protocol. Despite her history of mental health conditions and a known history of suicide attempts, she was not referred for mental health evaluation or treatment, and she did not receive any psychiatric care or medication.

Despite her serious medical conditions, Cupp was temporarily transferred several times to other county prisons, purportedly due to overcrowding at Lycoming County Prison. Despite her serious medical conditions, Cupp was placed in the general population while at Lycoming County Prison. Despite her serious medical conditions, Cupp was assigned a top bunk and placed on the upper tier of cells at Lycoming County Prison, requiring her to use stairs to access other locations, including the restroom and shower.

In the days before her death, Cupp was scheduled for the extraction of multiple teeth, but her dental treatment provider refused to perform the extractions until her medical problems—specifically her cardiac issues—were evaluated and treated. Despite being aware of Cupp's continuing cardiac issues and the dental treatment provider's concerns, the defendants failed to provide necessary medical treatment.

Despite her serious medical conditions and obviously declining health, Cupp was not sent for medical treatment outside the prison. Despite her serious medical conditions and obviously declining health, Cupp was not provided with necessary medications. She was not counseled regarding the taking of her medications, nor were her

medications reviewed to determine whether they should be adjusted.

Throughout the night of her death, Cupp screamed and cried out for help, she complained of not feeling well and being in pain, and she was gasping for air. No one from the jail's correctional or medical staff responded to Cupp's cries for help. Her demise was not discovered until she failed to respond for morning head count on February 22, 2019.

## II.   PROCEDURAL BACKGROUND

On September 30, 2021, we entered a memorandum opinion and order partially dismissing the plaintiff's seven-count amended complaint. (Doc. 52; Doc. 53.) *See also Cupp v. Cty. of Lycoming*, Civil Action No. 3:20-cv-001784, 2021 WL 4478304 (M.D. Pa. Sept. 30, 2021). We denied the defendants' motion to dismiss with respect to Count II of the amended complaint, which asserted a § 1983 municipal liability claims against the County of Lycoming based on the deliberate indifference of its employees or agents to the decedent's serious medical needs. We dismissed all official-capacity claims against the individual defendants as redundant because their employer, the County, was named as a defendant to all counts as well. We dismissed all personal-capacity damages claims against the individual defendants, set forth in Counts I, III, and V of the

amended complaint, as impermissibly vague and for failure to state a claim because the amended complaint failed to ascribe any of the alleged conduct to any of the individual defendants, relying instead on group pleading only. We dismissed the second of three § 1983 municipal liability claims, set forth in Count IV of the amended complaint, as duplicative of an identically worded § 1983 municipal liability claim set forth in Count II, and we dismissed the third such claim, set forth in Count VI, for failure to state a claim.[3] Finally, we dismissed the plaintiff's state-law medical negligence claims against the Physician Defendants, set forth in Count VII of the amended complaint, for failure to state a claim because these defendants, alleged to be County employees, were entitled to statutory immunity. In dismissing most of the amended complaint, however, we granted the plaintiff leave to file a second amended complaint and attempt to cure the pleading deficiencies upon which dismissal was based.

---

[3] Unlike Count IV, Count VI was worded differently from Count II. It asserted a § 1983 municipal liability claim based on the alleged deliberate indifference of County employees or agents to a particular vulnerability to suicide by the decedent, but, notwithstanding a history of suicide attempt, she made no attempt to commit suicide during the relevant period of incarceration.

On October 20, 2021, the plaintiff filed her five-count second amended complaint. (Doc. 54.) The second amended complaint omitted any claims based on deliberate indifference to a particular vulnerability to suicide.[4] While it maintained the same personal-capacity § 1983 damages claims against the 16 individual defendants based on deliberate indifference to serious medical needs and failure to intervene,[5] it asserted official-capacity claims against the warden and two deputy wardens only. It once again asserted identical § 1983 municipal liability claims against the County in Counts II and IV. It maintained the same state-law medical negligence claims against the Physician Defendants, now set forth in Count V of the second amended complaint.[6] But the second amended complaint now alleges that, rather than County employees, the Physician Defendants are independent contractors, and it adds more

---

[4] These claims were previously asserted against the individual defendants in Count V of the amended complaint and against the County in Count VI of the amended complaint.

[5] The deliberate indifference to serious medical needs claims were asserted in Count I of the amended complaint, and the failure to intervene claims were asserted in Count III of the amended complaint. They are set forth as Count I and Count III, respectively, in the second amended complaint as well.

[6] These claims were previously asserted against the Physician Defendants in Count VII of the amended complaint.

robust fact allegations in support of her § 1983 claims against the individual defendants, now including allegations identifying specific defendants.

As noted above, the defendants have moved to dismiss the second amended complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial

- 11 -

notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## IV.   DISCUSSION

The plaintiff has brought this federal civil rights action primarily under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, the plaintiff has asserted federal civil rights claims under several alternative theories of liability. In Count I, she claims that each of the individual defendants was deliberately indifferent to the decedent's serious medical needs while incarcerated, in violation of the decedent's Fourteenth Amendment substantive due process rights, and in Count II, she seeks to impose municipal liability on the County and supervisory liability on Shoemaker, Barnes, and Ebner for that same conduct by their

employees or subordinates.[7] In Count III, she claims that each of the individual defendants failed to intervene to protect the decedent from the deliberate indifference of the other defendants to the decedent's serious medical needs, in violation of the decedent's Fourteenth Amendment substantive due process rights, and in Count IV, she seeks to impose municipal liability on the County and supervisory liability on Shoemaker, Barnes, and Ebner for that same conduct by their employees or subordinates.[8]

### A. Official-Capacity Claims

The second amended complaint names three defendants—Warden Shoemaker, Deputy Warden Barnes, and Deputy Warden Ebner—in both official and personal capacities. It names their employer, the County of Lycoming, as a defendant as well. But "[o]fficial capacity actions are redundant where the entity for which the individuals worked is named." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 646 (M.D.

---

[7] In Counts II and IV, the plaintiff has alleged that the warden and deputy wardens were "chief policymakers" for the jail, against whom she asserts § 1983 supervisory liability claims.

[8] The second amended complaint includes a Count V as well, asserting state-law medical negligence claims against the Physician Defendants.

Pa. 2016) (dismissing official capacity claims against municipal officials as redundant when municipality was also named as a defendant). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Accordingly, the plaintiff's claims against these three individual defendants in their official capacity will be dismissed as redundant because their employer—Lycoming County—is also named in the amended complaint, pursuant to the Court's inherent authority to control its docket and avoid duplicative claims. *See Dewees v. Haste*, 620 F. Supp. 2d 625, 630 (M.D. Pa. 2009) (dismissing official-capacity claims against county prison officials where county was also named as a defendant); *see also Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131–32 (D.N.J. 2017); *Korth v. Hoover*, 190 F. Supp. 3d 394, 402–03 (M.D. Pa. 2016); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 431–32 (E.D. Pa. 1998).

## B. Personal-Capacity Claims

The second amended complaint brings personal-capacity § 1983

damages claims against all sixteen individual defendants. We dismissed the prior iteration of these claims because, while the now-superseded amended complaint alleged the factual circumstances giving rise to the plaintiff's federal civil rights claims, mostly in the passive tense, it ascribed no conduct *whatsoever* to any of the individual named defendants. All wrongful conduct alleged in the now-superseded amended complaint was attributed only generally to "Defendants," "prison employees," "medical providers," "jail or medical staff," and "no one." We found that this type of group pleading, lumping sixteen defendants together without setting forth what each particular defendant was alleged to have done, was impermissibly vague and thus failed to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure. *See Cupp*, 2021 WL 4478304, at *5. We further found that this vague pleading failed to adequately allege personal involvement by *any* of the individual defendants, and thus failed to state a plausible claim upon which relief could be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.* at *6.

In her second amended complaint, the plaintiff has repleaded the same § 1983 personal-capacity damages claims verbatim, but she has

added additional factual allegations specifically identifying each defendant by name and describing how the more generally alleged facts relate to each individual defendant. The defendants argue that, notwithstanding the pleading of these additional facts, the second amended complaint continues to rely on factual allegations that are too generalized to support a plausible claim for relief.

To survive a motion to dismiss, a complaint must allege "enough fact to state a claim to relief that is plausible on its face, which is to say, enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (citations, internal quotation marks, and brackets omitted); *see also Twombly*, 550 U.S. at 545 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."); *Bobrick Corp. v. Santana Prods., Inc.*, 698 F. Supp. 2d 479, 490 (3d Cir. 2010) ("This requirement of stating a claim that has facial plausibility calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of wrongful conduct.") (internal quotation marks and brackets omitted).

The now-superseded amended complaint did allege enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. But it failed to tie *any* of those factual allegations to specific defendants. With the more specific factual allegations newly added in the second amended complaint, we find that the plaintiff has now satisfied the requirements of Rule 8 and Rule 12(b)(6), stating a plausible § 1983 claim with respect to *most* of the individual defendants.

With respect to each individual defendant, the second amended complaint has alleged, based on information and belief, that each was aware of the decedent's medical history, serious medical conditions, and her need for ongoing treatment and monitoring while incarcerated. It has also alleged, based on information and belief, that each was aware of the decedent's complaints about not feeling well and her requests for medications and medical care, and that each personally witnessed her severe physical limitations and problems. As the Third Circuit has explained, "pleading upon information and belief is permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control—so long as there are no boilerplate and conclusory allegations and plaintiffs accompany their legal theory

with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 Fed. App'x 263, 267–68 (3d Cir. 2016) (internal quotation marks, brackets, and ellipses omitted).

While repetitive, we find these newly added factual allegations concerning each defendants' subjective awareness of the decedent's medical background and her vocal complaints and requests for medical treatment satisfy the criteria for facts alleged on information and belief, with the exception of the warden, the two deputy wardens, and the two physicians. In particular, we note that the second amended complaint also includes detailed factual allegations concerning institutional knowledge of the decedent's medical background and medical needs, concerning the decedent's frequent—if not unceasing—requests to correctional officers and prison medical staff for medical assistance, concerning her evident physical and behavioral symptoms, including "frequent cries of pain or for help" and observable physical incapacitation, and concerning the efforts of other inmates to provide the decedent with care and comfort and to bring her medical distress to the attention of correctional and medical staff, all over an extended period of *four months*.

The second amended complaint also alleges the specific roles played by each of these individual defendants (excluding the warden, deputy wardens, and physicians), including their *direct involvement* in her daily custodial and medical care. It further alleges specific facts concerning particular incidents in the days leading up to her death.

The second amended complaint does not, however, allege any facts to establish personal involvement by Warden Shoemaker, Deputy Warden Barnes, or Deputy Warden Ebner. *See generally Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014); *Cupp*, 2021 WL 4478304, at *6. It also does not allege any facts to plausibly suggest that either Dr. Keenan or Dr. Schifferli had the subjective awareness of Cupp's deteriorating medical condition necessary to support a finding of deliberate indifference. *See generally Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Based on the facts alleged in the second amended complaint, we find that the plaintiff has stated a plausible § 1983 claims of deliberate indifference to serious medical needs against the correctional officer defendants—Laird, Swaine, Marshall, and Mull—and the medical staff

defendants—Murphy, Dvorscak, Hoover, Poorman, Glover, Dawson, and Savage—each of whom is specifically alleged to have played a direct role in the custodial care or medical treatment of the decedent over the course of the four months immediately preceding her death while in custody. From this direct role and the other facts alleged in the second amended complaint, we find it plausible to infer that each of these defendants knew of and disregarded an excessive risk (or risks) to the decedent's health, resulting in her death. *See generally Pearson v. Prison Health Serv.*, 80 F.3d 526, 534 (3d Cir. 2017) ("[A] plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to his or her medical needs and (2) an objective showing that those needs were serious.") (internal quotation marks and brackets omitted).[9]

---

[9] The defendants argue that the correctional officer defendants—Laird, Swaine, Marshall, and Mull—cannot be held liable for deliberate indifference to serious medical needs because the decedent was under the care of prison medical staff. The Third Circuit indeed has held that a non-medical prison official cannot be held liable for deliberate indifference to serious medical needs if the prisoner is under the care of prison medical personnel, but this is only true so long as he or she has no "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating)" the prisoner. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). But here, the facts alleged in the second amended complaint suggest circumstances egregious enough to support a plausible claim that these correctional officers knew or had reason to believe that medical staff were mistreating or not treating the decedent.

We find the plaintiff's alternative theory of liability—failure to intervene—has also been plausibly stated with respect to these same individual defendants. Based on the very same factual allegations, the second amended complaint has sufficiently alleged that each of these defendants failed or refused to intervene when a constitutional violation by another defendant occurred in his or her presence or with his or her knowledge, and that he or she has a realistic and reasonable opportunity to intervene. *See generally Smith v. Mensinger*, 293 F.3d 641,. 651 (3d Cir. 2002) (holding that, to state a § 1983 claim for failure to intervene, a plaintiff must allege that (1) the defendant "fails or refuses to intervene when a constitutional violation . . . takes place in his [or her] presence" and (2) "there is a realistic and reasonable opportunity to intervene").

The defendants have suggested that these two claims are duplicative of one another. We acknowledge that they are closely related, but they are distinct legal theories, and at this early stage of the litigation, accepting all well-pleaded allegations in the second amended complaint as true and viewing them in the light most favorable to the plaintiff, we find that both claims have been adequately pleaded and should proceed to discovery. *See Wiley v. Young*, Case No. 21-cv-599-JPG,

2022 WL W488144, at *6 (S.D. Ill. Feb. 17, 2022).

Accordingly, with respect to Counts I and III of the second amended complaint, asserting personal-capacity § 1983 damages claims against the sixteen individual defendants based on deliberate indifference to the decedent's serious medical needs and based on failure to intervene to protect the constitutional rights of the decedent from infringement by others in their presence, the Physician Defendants' motion to dismiss will be granted and the County Defendants' motion to dismiss will be granted in part and denied in part. The plaintiff's personal-capacity § 1983 damages claims against defendants Dr. Keenan, Dr. Schifferli, Warden Shoemaker, Deputy Warden Barnes, and Deputy Warden Ebner will be dismissed without prejudice for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff's personal-capacity § 1983 damages claims against defendants Laird, Swaine, Marshall, Mull, Murphy, Dvorscak, Hoover, Poorman, Glover, Dawson, and Savage will proceed to discovery.

## C. Municipal Liability Claims

Counts II and IV of the second amended complaint are identical to the same counts asserted in the now-superseded amended complaint. For

the same reasons articulated in our prior opinion with respect to the amended complaint, we reach the same conclusions. *See Cupp*, 2021 4478304, at \*6–\*8.

Accordingly, with respect to Count II of the second amended complaint, asserting a municipal liability claim against the County, the County Defendants' motion will be denied. But Count IV of the second amended complaint, asserting an *identical* municipal liability claim against the County will be dismissed as duplicative, pursuant to the Court's inherent authority to control its docket and avoid duplicative claims.

### D. State-Law Medical Negligence Claims

In Count V of the second amended complaint, the plaintiff asserts medical negligence claims against the Physician Defendants, Dr. Keenan and Dr. Schifferli, both of whom are alleged to be independent contractors.

The Physician Defendants primarily argue that they are immune from medical negligence claims under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. § 8541 *et seq.* In considering the now-superseded amended complaint, we

dismissed this count on the pleadings because the Physician Defendants were alleged to be *employees* of the County, who therefore were clearly entitled to immunity. *See Cupp*, 2021 WL 4478304, at *8–*9. As we noted in the margin of our opinion, however, it is not so clear cut an issue when independent contractors are involved. *See id.* at *8 n.7. Whether these physicians are considered "employees" who fall within the scope of PSTCA immunity or "independent contractors" who do not is a fact-intensive question. *Compare Giandonato v. Montgomery Cty.*, No. Civ. A. 97-CV-0419, 1998 WL 314694, at *6 (E.D. Pa. May 22, 1998) (finding physician who provided psychiatric services to inmates at county jail under contract was entitled to PSTCA immunity), *with Helsel v. Complete Care Servs., L.P.*, 797 A.2d 1051, 1054–58 (Pa. Commw. Ct. 2002) (finding administrator of county-owned health care facility was an independent contractor not entitled to PSTCA immunity). The second amended complaint does not allege the sort of facts necessary for us to determine whether, as a matter of law, the Physician Defendants are employees or independent contractors for PSTCA purposes. *See, e.g., Francis ex rel. Estate of Francis v. Northumberland Cty.*, 636 F. Supp. 2d 368, 388–89 (M.D. Pa. 2009) (identifying relevant factors and denying summary

judgment to prison doctor on PSTCA immunity defense).

Alternatively, the Physician Defendants argue that the second amended complaint has failed to state a claim on the merits. To state a claim for medical negligence in Pennsylvania, "a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). Generally, "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Id.*

The Physician Defendants characterize the plaintiff's malpractice claim as nothing more than "artful recitations of the elements of a medical professional negligence claim." (Doc. 61, at 27.) We disagree. The plaintiff has alleged that Dr. Keenan and Dr. Schifferli were the decedent's treating physicians at the prison, and that they were under contract with the prison to provide medical services to inmates—indeed,

Dr. Keenan is also alleged to be the medical director of the prison. The plaintiff has alleged innumerable medical encounters with prison medical staff under the Physician Defendants' supervision. *See generally Rostock v. Anzalone*, 904 A.2d 943, 946 (Pa. Super. Ct. 2006) (noting that physician's professional duty included supervision of employees in professional context). While the plaintiff has not, as the Physician Defendants note, alleged a direct encounter between the decedent and either physician, that is the very gist of her claim—that the failure to provide any medical treatment by a physician at all over the course of the decedent's *four months* at the prison, particularly in light of her constant complaints of pain and requests for medical treatment, was a breach of the doctors' professional duty and of the applicable standard of care.

In light of the Physician Defendants' characterization of the second amended complaint's allegations as "mere[] artful recitations of the elements of a medical professional negligence claim," we find it worth recounting some of the facts actually alleged by the plaintiff:

> [Physician] Defendants breached their duty and the standard of care in many ways, including but not limited to the following: not adequately examining medical records, not sufficiently supervising Ashley Cupp's treatment, not acting on the needs addressed by

> the dentist,[10] not acting on Ashley Cupp's medication refusal, not acting on Ashley Cupp's complaints of feeling unwell, not treating Ashley Cupp in person, not reviewing her complaints with her, not providing lifesaving medications, not reviewing the effectiveness of her medications, not determining whether she needed to adjust her medications, not determining why she continued to experience symptoms, and not sending her to an outside facility for her complex medical conditions.

Doc. 54 ¶ 183.

Considered together with the other facts alleged in the second amended complaint, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, we find that the plaintiff has alleged sufficient facts to state a plausible claim for medical negligence against each of the Physician Defendants.

Accordingly, with respect to Count V of the second amended complaint, asserting state-law medical negligence claims against Dr. Keenan and Dr. Schifferli, the Physician Defendants' motion will be denied.

---

[10] Just before her death, a dentist had allegedly refused to perform a needed oral surgery because of the decedent's cardiac issues.

### E. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Given the prior opportunities to amend afforded to the plaintiff, and based on the facts alleged in the second amended complaint, it appears to us that further amendment at this time would be futile. Therefore, to the extent that the plaintiff's claims in her second amended complaint are dismissed, they are dismissed without leave to amend.

### V.   CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss will be granted in part and denied in part. The official-capacity claims against defendants Shoemaker, Barnes, and Ebner and Count IV of the amended complaint will be dismissed as duplicative. The personal-capacity § 1983 claims against defendants Shoemaker, Barnes, Ebner, Keenan, and Schifferli will be dismissed for failure to state a claim upon which relief

can be granted. The remaining claims—§ 1983 municipal liability claims against Lycoming County, personal-capacity § 1983 damages claims against defendants Laird, Swaine, Marshall, Mull, Murphy, Dvorscak, Hoover, Poorman, Glover, Dawson, and Savage, and state-law medical negligence claims against defendants Keenan and Schifferli will proceed to discovery.

An appropriate order follows.

Dated: September 19, 2022          ___***s/Joseph F. Saporito, Jr.***___
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge